**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| MRR Southern, LLC, ) | Civil Action No. 4:09-03102-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Citizens for Marlboro County, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter arises as a result of efforts by Plaintiff MRR Southern, LLC ("Plaintiff"), to construct a landfill in Marlboro County, South Carolina. Defendant Citizens for Marlboro County ("Defendant"), a local citizens group consisting of Marlboro County residents and/or property owners, openly opposed the construction of the proposed landfill. Plaintiff filed this action against Defendant alleging a state law claim for defamation, i.e., libel per se and libel per quod. (ECF No. 1.)

This matter is before the court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 40.) Plaintiff asserts that the court should deny Defendant's motion because it has submitted evidence demonstrating a genuine issue of material fact as to its claims for defamation. (ECF No. 48.) For the reasons set forth below, the court **GRANTS** Defendant's motion for summary judgment.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are as follows. Plaintiff is a member of MRR Sandhills, LLC ("MRR Sandhills"), which company was formed for the purpose of developing a sanitary landfill on a site in northern Marlboro County. (ECF No. 1, ¶

7.) MRR Sandhills obtained a demonstration of need from DHEC for the proposed facility and subsequently obtained from DHEC a preliminary determination that the proposed facility was consistent with the Marlboro County Solid Waste Management Plan. (ECF No. 1, ¶ 8.) Defendant set up a public relations campaign to create public opposition to MRR Sandhill's proposed facility. (ECF No. 1, ¶ 10.) As part of its campaign against Plaintiff, Defendant ran advertisements in newspapers of general circulation in Marlboro County, and also published information about Plaintiff on Defendant's website located at www.no-megadump.com. (ECF No. 1, ¶¶ 11 & 12.)

Plaintiff filed a summons and complaint alleging defamation against Defendant in this court on November 30, 2009. (ECF No. 1.) On January 19, 2010, Defendant answered the complaint generally denying Plaintiff's allegations. (ECF No. 4.) On February 19, 2010, Defendant moved for leave to amend the answer to assert an additional affirmative defense. (ECF No. 9.) On February 22, 2010, the Magistrate Judge granted Defendant's motion to amend. (ECF No. 11.) Defendant amended its answer on February 22, 2010. (ECF No. 12.) On March 7, 2011, Defendant moved for summary judgment. (ECF No. 40.) Plaintiff filed opposition to Defendant's motion for summary judgment on May 6, 2011, to which Defendant filed a reply in support of summary judgment on June 2, 2011. (ECF Nos. 48 & 52.)

## II.   LEGAL STANDARD AND ANALYSIS

### A.   Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

there is no "genuine issue for trial." Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

Summary judgment occupies a position of great importance in libel actions as compared with other civil actions, due to the possible chilling effect on constitutionally protected speech which would result from the defense of defamation claims. Peeler v. Spartanburg Herald–Journal Div. of the N.Y. Times Co., 681 F. Supp. 1144, 1146 (D.S.C. 1988). Courts have expressed a preference for the dismissal by summary judgment of libel cases in order to prevent all but the strongest cases from proceeding to trial. Sunshine Sportswear & Elec., Inc. v.

WSOC Television, Inc., 738 F. Supp. 1499, 1505 (D.S.C. 1989) (citations omitted).

**B.    Defamation Generally**

The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 501 (S.C. 1998). The communications at issue in this matter are in the form of libel. Libel is defamation through written communication, the publication of pictures or photographs, or by broadcast media. See Wilhoit v. WCSC, Inc., 358 S.E.2d 397, 400 (S.C. Ct. App. 1987). To establish a claim for defamation, the plaintiff must show (1) a false and defamatory statement was made concerning the plaintiff; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.[1] Fleming v. Rose, 567 S.E.2d 857, 860 (S.C. 2002). Additionally, a plaintiff, who is a public official or public figure, must prove by clear and convincing evidence that the defendant acted with constitutional actual malice in publishing a false and defamatory statement about the plaintiff. Time, Inc. v. Firestone, 424 U.S. 448, 453-55 (1976); Curtis v. Butts, 388 U.S. 130, 162-65 (1967); New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Fleming, 567 S.E.2d at 860-61; Holtzscheiter, 506 S.E.2d at 507-08. Constitutional actual malice exists when a statement is made "with knowledge that it was false

---

[1] The defamatory meaning of a message or statement may be obvious on the face of the statement, in which case the statement is defamatory per se. Holtzscheiter, 506 S.E.2d at 501. If the defamatory meaning is not clear unless the hearer knows facts or circumstances not contained in the statement itself, then the statement is defamatory per quod, and the plaintiff must introduce extrinsic facts to prove the defamatory meaning. Id. In addition to those classifications, a statement may be actionable per se, in which case the defendant is presumed to have acted with common law malice and the plaintiff is presumed to have suffered general damages. Id. A statement may also not be actionable per se, in which case nothing is presumed and the plaintiff must plead and prove both common law malice and special damages. Holtzscheiter, 506 S.E.2d at 501-02. Libel is actionable per se if it involves "written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous . . . ." Holtzscheiter, 506 S.E.2d at 502 (quoting Lesesne v. Willingham, 83 F. Supp. 918, 921 (E.D.S.C. 1949)). If the trial judge can legally presume, because of the nature of the statement, that the plaintiff's reputation was hurt as a consequence of its publication, then the libel is actionable per se. Id.

or with reckless disregard of whether it was false or not." New York Times, 376 U.S. at 279-80.[2] "Instructions [on common law malice], which permit the jury to impose liability on the basis of the defendant's hatred, spite, ill will, or desire to injure are clearly impermissible." Old Dominion Branch No. 496 v. Austin, 418 U.S. 264, 281 (1974).

### C. Plaintiff's Claim for Defamation

Plaintiff alleges that Defendant defamed it by publishing false and defamatory statements about Plaintiff in the local newspaper, the Marlboro-Herald Advocate, and on Defendant's website located at www.no-megadump.com. Plaintiff contends that these false and defamatory statements included assertions that Plaintiff's landfill would bring life threatening situations to Marlboro County as a result of landfill trains blocking emergency vehicles and that the landfill would bring large amounts of syringes and human waste which would endanger citizens' children. (ECF No. 1, ¶¶ 14-15, 21, ECF Nos. 1-1 & 1-2.) Plaintiff further contends that Defendant attributed to Plaintiff ownership of the Kersey Valley landfill in North Carolina, which landfill was known for its unsanitary conditions. (Id.)

Defendant contends that it is entitled to summary judgment on Plaintiff's claim for defamation on the following grounds: (1) Plaintiff was a limited-purpose public figure in regards to the proposed landfill, which status requires it to prove by clear and convincing evidence that Defendant acted with constitutional actual malice in making the allegedly defamatory communications; (2) Defendant's alleged defamatory communications were not actionable per se because of the nonexistence of evidence showing that Plaintiff's reputation was hurt as a

---

[2] In New York Times, the United States Supreme Court recognized that the First Amendment's guarantees of freedom of speech and of the press place certain limits on the right of the states to award damages in a libel action. New York Times, 376 U.S. at 256. These limitations are necessary because "[t]he protection of the public requires not merely discussion, but information . . . . Whatever is added to the field of libel is taken from the field of public debate." Id. at 272. These First Amendment concerns invalidate some of the common law defamation requirements in cases involving private figures and matters of public concern. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974). Thus, in private figure cases involving matters of public concern, the common law presumption of falsity is invalid, the plaintiff must prove the statement was false. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775 (1986).

consequence of any statement made by Defendant; (3) Plaintiff failed to show that Defendant's communications were made with knowledge they were false or with reckless disregard for whether they were false or not; (4) Plaintiff failed to prove that Defendant's communications were false and/or defamed Plaintiff; (5) Plaintiff failed to plead and prove special damages; and (6) Plaintiff failed to prove that Defendant acted with common law malice.  (ECF No. 40-1, pp. 14, 15, 18, 20, 21, 23, 24,  26.)

### 1. Limited-Purpose Public Figure Status

The important initial step in analyzing any defamation case is determining whether a particular plaintiff is a public official, public figure, or private figure.  Erickson v. Jones St. Publishers, L.L.C., 629 S.E.2d 653, 666 (S.C. 2006).  This determination is a matter of law, which finding must be made by the court.  Id.  Whether a person is a limited-purpose public figure is determined by a two-part inquiry: (1) whether public debate gave rise to the defamatory statement; and (2) whether the plaintiff's participation in the controversy established him as a public figure within the context of the controversy.  Foretich v. Capital Cities/ABC. Inc., 37 F.3d 1541, 1551 (4th Cir. 1994).  In this case, Defendant has shown that public debate did give rise to any alleged defamatory statements as Defendant's advertisement and website publications were in direct response to the public controversy surrounding the proposed placement of a landfill in Marlboro County, South Carolina.[3]  (See ECF Nos. 41-1 & 41-2.)

Therefore, the next necessary determination is whether Plaintiff's participation in the controversy established it as a public figure within the context of that controversy.  There is a five-part test to determine whether the plaintiff has thrust itself into a controversy to the extent

---

[3] Defendant asserts that it was specifically formed "for the very reason of organizing public opposition and furthering public debate related to the controversial landfill."  (ECF No. 40-2, p. 1.)

necessary to trigger public figure status. The factors are: (1) whether the plaintiff has access to effective channels of communication; (2) whether the plaintiff voluntarily assumed a role of special prominence in the controversy; (3) whether the plaintiff sought to influence the resolution of the controversy; (4) whether the controversy existed prior to the publication of the defamatory statements; and (5) whether the plaintiff retained public figure status at the time of the alleged defamation. Fitzgerald v. Penthouse Int'l Ltd., 691 F.2d 666, 668 (4th Cir.1982).

The first three factors are satisfied by Defendant's evidence showing that Plaintiff hired a public relations firm to send a mailer to all the residents of Marlboro County of Plaintiff trumpeting the economic benefits of the proposed landfill. (See ECF No. 40-5, pp. 48-49; ECF No. 40-10.) Defendant's evidence further established the fourth factor by showing that the controversy regarding the proposed landfill was well-known in 2007, long before the publication dates of the alleged defamatory communications in 2008 and 2009. (See ECF Nos. 1-1 & 1-2.) Finally, the fifth factor is satisfied by Defendant's evidence showing that its allegedly defamatory publications were published to rebut Plaintiff's previously mentioned public mailer. (See ECF No. 1-1; ECF No. 40-5, pp. 49-50.) Therefore, the court finds that in the context of the landfill campaign, Plaintiff was a limited-purpose public figure, which finding means that Plaintiff can only recover for defamatory statements made with constitutional actual malice.

2.      Constitutional Actual Malice

In order to prove constitutional actual malice, Plaintiff must prove that Defendant "entertained serious doubts as to the truth of [its] publication" because "[p]ublishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." St. Amant v. Thompson, 39 U.S. 727, 731 (1968). To establish its members' perception of the truth of the information published, Defendant offered the following statement of its president:

> Upon learning about the proposed landfill, I, along with other CMC members gathered information about landfills and the hazards associated with landfills through internet research, South Carolina Department of Health and Environmental Control employees and documents, and talking with citizens living near landfills or proposed landfills. We conducted this research to educate ourselves on the potential impacts of landfills, and we were very surprised at the information we uncovered. See Exhibit A [ECF No. 40-2, pp. 4-237], which represents portions of our research. That research shows that 1) landfills at most locations causes ground water contamination from landfill leachate, 2) landfills have polluting effects, 3) that noxious gases are released from landfills and 4) that cancer rates are higher around landfills. We have also heard from residents living near the Lee County landfill of awful odors and increased sickness and disease associated with the Lee County landfill.
>
> After learning of the environmental risks associated with landfills, and the threat to our quality of life, CMC began openly opposing the proposed landfill in public forums, including at County Council meetings and through newspaper advertisements and by starting a web site. All of the information we used for the website and the newspaper ads came from research we conducted on the internet, from the newspapers, what we saw in the permit files, from what people living near landfills told us and from what DHEC told us. I have no reason to believe that the information we gathered was not truthful or accurate and CMC published this information with a good faith belief that the information was truthful.

(ECF No. 40-2, pp. 1-2.) These words are more than a conclusory denial of constitutional actual malice. The statement along with the supporting documentation provide specific evidence of Defendant's grounds for its good faith belief in the truthfulness of the allegedly defamatory statements. (See ECF No. 40-2.)

In contrast, Plaintiff, who bears the burden of proving Defendant's knowledge of falsity, failed to come forward with evidence that would justify a jury concluding that there is clear and convincing evidence of constitutional actual malice. While Plaintiff refuses to agree that it is anything other than a private entity, and further contends that it provided Defendant with all the "true information" that it needed, Plaintiff failed to identify specific evidence establishing that Defendant knew of false statements in its publications or entertained serious doubts as to the truthfulness of the publications. (See ECF No. 48, pp. 5-6.) Therefore, as a matter of law,

Plaintiff has not met its burden of demonstrating that it can prove constitutional actual malice to a jury with clear and convincing evidence. Consequently, Defendant is entitled to summary judgment as to Plaintiff's claims for defamation.

### III.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the motion for summary judgment of Defendant Citizens for Marlboro County regarding Plaintiff's claims for defamation. (ECF No. 40.)

**IT IS SO ORDERED**.

J. Michelle Childs

J. MICHELLE CHILDS
UNITED STATES DISTRICT JUDGE

March 26, 2012
Greenville, South Carolina